**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

DWAYNE WILLIAMS,

                 Plaintiff

    v.

JASON WILLIAMS, IN HIS OFFICIAL
CAPACITY, and ABC INSURANCE
COMPANIES 1-10,

                 Defendants.

CIVIL ACTION NO. 23-1922

SECTION "I"
JUDGE LANCE M. AFRICK

MAGISTRATE DIV. 1
JUDGE JANIS van MEERVELD

JURY TRIAL DEMANDED

**PLAINTIFF DWAYNE WILLIAMS'S**
**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

      NOW INTO COURT, through undersigned counsel, comes the Plaintiff, Dwayne Williams, who, provides this Opposition to Defendant Jason Williams's Motion to Dismiss.[1]

### INTRODUCTION AND BACKGROUND

      Dwayne Williams spent over twenty-six (26) years serving a life sentence for a murder he did not commit because the Orleans Parish District Attorney's Office (OPDA) suppressed critical evidence indicating he was not involved in the murder. Through his §1983 Petition, Plaintiff Williams now seeks to hold accountable those responsible for depriving him of his freedom for over half his life.

      Defendant Jason Williams, in his official capacity as head of OPDA, seeks to dismiss the petition, which he characterizes as no more than an "attempt to take improper advantage"[2] of OPDA's <u>eventual</u> recognition that an injustice was done to Dwayne Williams. But before

---

[1] R. Doc. 4.
[2] R. Doc. 4-2 at p. 2.

addressing the legal merits – or lack thereof – of Defendant's argument, it bears emphasizing the extraordinary injustice Williams suffered at the hands of OPDA.

OPDA prosecuted Williams for the murder of Laston Clark under a theory that Dwayne Williams and another individual exited a brown station wagon and shot Laston Clark before returning to the brown station wagon, driving away from the scene, and thereafter hiding their guns beneath Dwayne William's mother's house. However, at no point did OPDA reveal to Williams, his attorney, or the jury that: (1) an eyewitness reported seeing the shooters exit a green Monte Carlo (not a brown station wagon) and begin shooting at Laston Clark before fleeing the scene on foot (not in a brown station wagon); (2) NOPD recovered twenty-one latent prints from items inside the green Monte Carlo – all of which excluded Dwayne Williams as a possible source; (3) a latent print from a gun beneath Dwayne Williams's mother's house also excluded Williams as a possible source; or that (4) two eyewitnesses made statements that the shooters left on foot (not in a brown station wagon) and one of these witness's statements directly exculpated Williams.

Suppressing this evidence, OPDA ultimately secured the wrongful conviction of Williams, in violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution. And as a direct result, Williams was sentenced to spend the rest of his life in prison, without the possibility of parole. He then spent over twenty-six (26) years in prison – suffering injuries unimaginable to most.

Eventually, OPDA's Civil Rights Division reviewed Williams's case and joined Williams in a "Joint Agreement and Motion to Vacate Conviction" based upon "significant information discovered since trial that was not known to the jury which convicted Mr. Williams and which cast doubt on his guilt and on the integrity of the process by which he was convicted."[3] Notably, OPDA agreed that "favorable information…had been in the possession of the State during their

---

[3] R. Doc. 1 at p. 4.

trial…[but] was not turned over to the defense."[4]

The district court ultimately vacated Williams's conviction and released him from prison. Following his release, Williams filed this action against Jason Williams, in his official capacity only, seeking to hold OPDA liable for the extraordinary injuries he suffered.

Defendant has responded by filing a Motion to Dismiss under Fed. R. Crim. Proc. 12(b)(6), seeking to insulate OPDA from liability for the unconstitutional acts of the office under predecessor District Attorney Harry Connick. Defendant argues that Louisiana's district attorneys act as state policymakers – not local policymakers – when creating and implementing intra-office policies regarding the acquisition of, security of, and disclosure of *Brady* materials.

But as detailed below, Defendant's Motion to Dismiss is based on a legal theory that is directly contradicted by controlling Fifth Circuit precedent.  Moreover, this precise theory has been rejected by four other sections of Court in the Eastern District of Louisiana.  The Motion to Dismiss must be denied.

## LEGAL STANDARD

Motions under Rule 12(b)(6) are "disfavored" and "rarely granted."[5] "To survive a motion to dismiss, a complaint need not contain 'detailed factual allegations'; rather, it need only allege facts sufficient to 'state a claim for relief that is plausible on its face.'"[6] A claim  "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7] In ruling on the

---

[4] *Id.* at pp. 4-5.
[5] *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).
[6] *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[7] *Id.*

motion, the court "must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff."[8]

## LAW AND ANALYSIS

### 1. Controlling Precedent Forecloses Defendant's Argument

At the outset, it must be emphasized that Defendant's argument is foreclosed by controlling Fifth Circuit precedent – a fact recognized by every judge who previously considered Defendant's argument.[9]

#### *The Fifth Circuit squarely addressed the issue in <u>Burge v. Parish of St. Tammany</u>[10]*

Defendant argues that Williams has failed to state a claim against OPDA because, when a Louisiana district attorney creates policies concerning the disclosure of *Brady* materials, those acts are "attributable to the State of Louisiana—not the Parish of Orleans, not the City of New Orleans, and not the 'District Attorney's Office' as an independent local government entity."[11] Therefore, as the argument goes, OPDA, as a "local government entit[y] cannot be held liable" for these policies.[12]

---

[8] *Frye v. Anadarko Petro. Corp.*, 953 F.3d 285, 290-91 (5th Cir. 2019).

[9] *See Smith v. Williams*, No. 22-cv-1550, 2023 U.S. Dist. LEXIS 32662, at *19 (E.D. La. Feb. 28, 2023) (Brown, J.) ("[t]he [*Burge*] decision by the Fifth Circuit clearly answers the issue presented in the instant motion and finds that Louisiana District attorneys act as an independent local entity, not on behalf of the State, in creating policies for disclosure of evidence to criminal defendants under Brady"); *Floyd v. Dillmann*, No. 19-cv-8769, 2023 U.S. Dist. LEXIS 36471, at *8 (E.D. La. Mar. 6, 2023) (Milazzo, J.) ("[u]nfortunately for Defendant, the Fifth Circuit has already foreclosed a holding that a district attorney is acting for the State in creating *Brady* policies under Louisiana law"); *Reeder v. Williams*, No.22-cv-4614  2023 U.S. Dist. LEXIS 58818, at *7 (E.D. La. Apr. 4, 2023) (Zainey, J.) ("*Burge* does control and *Burge* remains good and binding law following *Daves*")*; Jones v. Williams*, No. 22-cv-5097, 2023 U.S. Dist. LEXIS 75876, at *8 (E.D. La. May 2, 2023) (Ashe, J.) ("[t]hus, *Burge* necessitates the conclusion that a district attorney in Louisiana acts on behalf of the district attorney's office when making decisions regarding the disclosure of exculpatory evidence — not the state").

[10] *Burge v. Parish of St. Tammany*, 187 F.3d 452 (5th Cir. 1999).

[11]  R. Doc. 4-3 at p. 3.

[12] R. Doc. 4-3 at p. 15.

But the Fifth Circuit squarely addressed this issue in *Burge v. Parish. of St. Tammany*: "in a suit against a district attorney in his official capacity under § 1983 for constitutional torts caused by the district attorney's policies regarding the acquisition, security, and disclosure of Brady material," the "district attorney's office" is liable "as an independent local entity."[13][14]

### *Neither Daves nor Arnone overruled or otherwise undermined Burge*

Defendant seeks to circumvent controlling precedent by arguing that two recent Fifth Circuit decisions, *Daves v. Dallas County*[15] and *Arnone v. County of Dallas County*[16], undermine the *Burge* decision. But this argument is likewise unavailing.

It is well-established in the Fifth Circuit that only "intervening precedent by [the court] sitting en banc or a Supreme Court precedent" can overturn a prior panel's decision.[17] Even "[a]n en banc decision cannot overturn a binding published panel decision unless it does so clearly."[18] *Arnone* therefore, could not overturn *Burge* because it is not an en banc decision. And while *Daves*, was issued by the en banc court, that decision analyzed different public officials (county judges) under a different state's law (Texas).  Thus, it is unhelpful for addressing these specific acts of district attorneys under Louisiana law. And critically, *Daves* makes absolutely no mention of *Burge*, much less holding that it is overturned.

---

[13] *Burge v. Parish of St. Tammany*, 187 F.3d 452, 470 (5th Cir. 1999).

[14] This conclusion refutes Defendant's contention that *Burge* "never squarely answers" the question of whether a "Louisiana district attorney act[s] on behalf of the State of Louisiana, or on behalf of the 'district attorney's office' (an independent local governmental entity), when he or she creates policies relating to disclosure of evidence in prosecutions for state-law crimes?" However, for good measure, it should be noted that *Burge* began its analysis acknowledging that "Supreme Court's cases on the liability of local governments under § 1983 instruct us to ask whether governmental officials are policymakers for the local government in a particular area, or on a particular issue" *Burge*, 187 F.3d at 468 (emphasis added).

[15] *Daves v. Dall. Cty.*, 22 F.4th 522, 527 (5th Cir. 2022) (en banc).

[16] *Arnone v. Cty. of Dall. Cty.*, 29 F.4th 262, 264 (5th Cir. 2022).

[17] *FDIC v. Dawson*, 4 F.3d 1303, 1307 (5th Cir. 1993).

[18] *United States v. Vega*, 960 F.3d 669, 675 (5th Cir. 2020).

Defendant attempts to avoid this by offering an elaborate argument in which an analysis of the "dual hat issue" under *Daves v. Dallas County*, 22 F.4th 522 (5th Cir. 2022)(*en banc*) produces a result that overrules *Burge*.[19] But Defendant's argument turns the concept of binding precedent on its head:  any analysis of the "dual-hat" issue must begin with *McMillian v. Monroe County*, 520 U.S. 781 (1997).[20]  There should be no legal "daylight" between the *McMillian* analysis and the *Daves* analysis.  And there is none: *Daves* is nothing more, and nothing less than an application of *McMillian* to certain members of the Texas judiciary, and *Burge* is nothing more, and nothing less than an application of *McMillian* to Louisiana district attorneys.  Tellingly, Defendant's argument[21] that the court in *Burge* erroneously considered (1) whether the official is autonomous or subject to control by State officials; (2) whether the State is vicariously liable for the torts of the official; and (3) the source of the official's funding, entirely ignores the fact that these were all_ key considerations in the Supreme Court's analysis in *McMillian* v. *Monroe County*.[22]

---

[19] R. Doc. 4-3 at pp. 16-22.

[20] "**Finally, importantly, and obviously, the Supreme Court in *McMillian* stated how to determine in a Section 1983 suit whether an official was acting for a state or a local government.** Even if the *Hudson* opinion itself claimed it had relevance to that determination, though we hold it did not, **nothing there can override a Supreme Court decision**." *Daves v. Dallas Cnty., Texas*, 22 F.4th 522, 534 (5th Cir. 2022)(emphasis added).

[21] R. Doc. 4-3 at pp. 17-18.

[22] *See McMillian v. Monroe County*, 520 U.S. 781, 791 (1997) (emphasizing that "the governor and the attorney general do have…control" over "how the sheriff fulfills his law  enforcement duties"); *Id.* at 788 (emphasizing the Alabama Governor's "effort[s] at centralized  control" of sheriffs); *Id.* at 789 (describing the fact that tort actions against sheriffs based on their official actions  constitute suits against the State as being "strong evidence" that sheriffs "act on behalf of the  State"); *see also Id.* at 790-91 (indicating that the importance attributed to source of funding turns on whether it "translate[d] into control over [the official]").

And Defendant's reliance on *Arnone's* determination that *Crane I* and *Crane II* [23] were undermined by the *Daves* decisions, followed by an argument that *Burge* was likewise undermined, is also misplaced.[24] As *Arnone* emphasizes, *Crane I* and *Crane II* were decided <u>before</u> the Supreme Court established the controlling analytical framework in the *McMillian* decision.[25] Conversely, *Burge* was decided <u>after</u> *McMillian* and in fact, relies extensively upon *McMillian*'s analytical framework.[26]

Moreover, the decisions in *Daves* and *Arnone* are not incongruent with the decision in *Burge*. The Supreme Court in *McMillian* anticipated the same public officer would be treated differently in different states: "since it is entirely natural that both the role of [the official] and the importance of counties vary from State to State, there is no inconsistency created by court decisions that declare [the official] to be county officers in one State, and not in another."[27] [28]

In short, Defendant has pointed to nothing in *Daves* that modifies, changes, or re-invents *McMillian* – nor could he.  The Fifth Circuit follows Supreme Court precedent, even if the Defendant wishes it did not. And because *Burge* was simply an application of *McMillian* to Louisiana district attorneys, nothing in *Daves* undermines the validity of that decision.

Defendant's invitation to this Court to reexamine binding Fifth Circuit precedent should be rejected.

---

[23] *See Crane v. Texas*, 759 F.2d 412, 415 (5th Cir. 1985); *Crane v. Texas*, 766 F.2d 193, 195 (5th Cir. 1985).
[24] *See* R. Doc.4-3 at p. 8. (citing *Arnone*, 29 F. 4th at 270-71).
[25] *See Arnone*, 29 F.4th at 271.
[26] *See Burge,* 187 F.3d at 469-70.
[27] *McMillian v. Monroe Cty.*, 520 U.S. 781, 795 (1997).
[28] For this reason, Defendant's argument that district attorneys in Louisiana must be treated the same as district attorney's in Texas and Mississippi is entirely without merit. *See* R. Doc. 4-2 at p. 2.

**2. Under the *McMillian* Framework, Louisiana District Attorneys Are Local Policymakers**

Even if this Court were to accept the Defendant's invitation to reexamine the issue despite binding Circuit Precedent – which it should not – Defendant's motion should still be denied.  Application of the analytical framework established in *McMillian*[29] makes clear that, under Louisiana law, district attorneys are acting on behalf of an independent local government entity – not the State – when establishing internal policies and conducting training regarding the acquisition of, security of, and disclosure of *Brady* materials.

The framework established by *McMillia*n directs courts to look to state law provisions, including their legislative histories and judicial interpretations, in order to discern the legislative "intent"[30] as to whether the particular public official acts for the state or a local government entity when performing the particular function in question. The analysis conducted in *McMillian* further demonstrates that the court properly focuses on multiple considerations: (1) the historical background of the particular public official;[31] (2) whether the official is "designated" as a state or local official;[32] (3) whether the state is liable for the official's tortious acts;[33] and (4) whether state-level officers can direct and control the officials in the performance of their duties. [34]

As detailed below, consideration of these factors under Louisiana law demonstrates that Louisiana's district attorneys act on behalf of an independent local governmental entity – not the

---

[29] The Defendant acknowledges that *McMillian* is the "controlling Supreme Court decision" on this issue. *See* R. Doc. 4-3 at p. 8.

[30] *See McMillian,* 520 U.S. at 786-87.

[31] *See Id.* at p. 793-95 (discussing "the history of sheriffs" from English common law to our nation's founding).

[32] *Id.* at 787.

[33] *Id.* at 789.

[34] *Id.* at 789-91.

State – when establishing internal policies and training regarding prosecutors' acquisition of, security of, and disclosure of *Brady* materials.

### a. Historical Considerations

In *McMillian,* the Supreme Court framed the question before it thusly: "We simply ask whether Sheriff Tate represents the State or the county when he acts in a law enforcement capacity." *McMillian,* 520 U.S at 785-786. As noted above, to answer the question, the Court considered a wide variety of factors, one of which was "the history of sheriffs."[35] Although the dissent in *McMillian* was extremely critical of that history,[36] it must be accepted as supporting the conclusion that a sheriff acts for the <u>state</u> in law enforcement matters. That is certainly <u>not</u> true of the history of the office of district attorney.

In what is described as "the first detailed study of when, how, and why American state and local prosecutors became elected officials," the article by Michael J. Ellis entitled *The Origins of the Elected Prosecutor*, 121 Yale L.J. 1528 (2012) provides a history that is antithetical to any claim that American district attorneys in general act for the state, and fatal to any claim that Louisiana district attorneys do so.

First, district attorneys in the United States (including Louisiana) are not a product of the common-law: "The United States is the only country in the world where citizens elect prosecutors. Local public prosecutors – whether called district attorneys, state's attorneys, prosecuting attorneys, or county attorneys—originated in colonial American **without counterpart in eighteenth-century England**." *The Origins of the Elected Prosecutor*, *supra,* p. 1530 (footnotes omitted)(emphasis added).

---

[35] *McMillian*, 520 U.S. at 793.

[36] "The Court's reliance on 'the ancient understanding of what it has meant to be a sheriff,' *ante*, at 1741, is no more persuasive than its interpretation of Alabama law." *McMillian*, 520 U.S. at 803 (Ginsberg, J., Souter, J., and Breyer, J., dissenting).

As Ellis notes, although prosecutors were originally appointed government officers, between 1832 and 1860 "nearly three-quarters of the states in the Union decided to give voters the right to elect prosecutors.  *Id.,* (footnote omitted).  According to Ellis, this was part of a larger reform movement created by popular dissatisfaction with political patronage:[37]

> Contrary to explanations in terms of partisan advantage, supporters of elected district attorneys intended to reduce the ability of legislatures and governors to appoint political allies as prosecutors.  Reformers hoped popular election of district attorneys would deprive governors of a patronage opportunity.  Moreover, they hoped **that district attorneys elected by the voters of each county would be more responsive to the criminal justice priorities of local communities than prosecutors selected by a governor or legislature located in the state capital.**

*The Origins of the Elected Prosecutor*, *supra,* p. 1535 (footnotes omitted)(emphasis added).

In Ellis's words: "[e]lecting prosecutors also allowed communities to maintain control over the functions of local government." *The Origins of the Elected Prosecutor*, *supra,* p. 1558.

Louisiana began electing prosecutors in 1852, as a result of the 1852 Constitutional Convention.  *The Origins of the Elected Prosecutor*, *supra,* p. 1569.   In that constitution, Louisiana was divided into four judicial districts.  *Constitution of the State of Louisiana,* adopted July 31, 1852, Title IV, Art. 64.  Although the Constitution provided for an office of Attorney-General, and for four District Attorneys, Title IV, Art. 83, the Constitution did not give the Attorney General any authority over the District Attorneys, who were elected only by the voters in their district. *Id.*

---

[37] "In Louisiana, one delegate to the state's 1845 constitutional convention complained that '[s]warms and myriads of office hunters . . .  besiege and beset every avenue which leads to the executive palace' when a new governor comes into office, and that these 'hosts of individuals . . . follow in the wake of the two great political parties, as sharks follow in the wake of a ship for the offal that is thrown overboard.'" *The Origins of the Elected Prosecutor*, *supra,* p. 1548 (footnotes omitted).

In addition, under Title VI, "General Provisions," Art. 96, "district or parish" officers are required to reside "within their district or parishes, and shall keep their offices at such places there as may be required by law."  This distinguished them from "civil officers for the State at large," who were merely required to reside within the State.  Put another way, the Constitution's clear intention was to treat District Attorneys as <u>local</u> officials, not as agents of the State.

### b.  Designation of district attorneys as local government officials

The Supreme Court in *McMillian* further emphasized the importance of considering the public official's "designation" within state law provisions as being indicative of legislative intent on the issue.[38]

Under Louisiana law, the framers of the Louisiana Constitution made clear that district attorneys are to be considered local officials, twice designating them as "parish official[s]" in Section 5, and Section 7 of Article VI, the article addressing "Local Government."[39]

The Defendant, however, points to the fact that district attorneys are discussed within Article V, entitled "Judicial Branch", as proof that the Constitution "unambiguously recognizes district attorneys as state government officials and vests them with power to act on behalf of the State of Louisiana."[40] This assertion is erroneous on both accounts.

First, the fact that district attorneys are discussed in a subsection under Article V, entitled "the Judicial Branch"[41], does not thereby "vest[ ] them with power to act on behalf of the state." To the contrary; Article V, Section 1 specifies that "[t]he judicial power is vested in a supreme

---

[38] *See McMillian*, 520 U.S. at 787.

[39] *See* La. Const. Art. VI, § 5 ; La. Const. Art. VI, § 7; *see also* Opinion Number 89-210(A), La. Atty. Gen. Op. No. 1989-210, 1989 La.AG LEXIS 390 at *14 ("Art. VI of the Louisiana Constitution twice designated the district attorney…as 'parish officials'").

[40] R. Doc. 4-3 at p. 11.

[41] Indeed, Article V also discusses coroners, jurors and grand jurors– none of whom would be considered "vested" with state power of the judicial branch.

11

court, courts of appeal, district courts, and other courts authorized by this Article." That district attorneys are omitted from this list is significant: "[t]he settled doctrine of statutory construction, *Expressio Unius est Exclusio Alterius*, dictates that when the legislature specifically enumerates a series of things, the legislature's omission of other items, which could have easily been included in the statute, is deemed intentional."[42] In short, contrary to Defendant's assertion, the framers intentionally refrained from vesting district attorneys with Article V powers.

Defendant's reliance on the reasoning in *Diaz v. Allstate Ins. Co.*[43] in support of this argument is also misplaced. As the *Burge* Court noted, in *Diaz* "the Louisiana Supreme Court produced a fractured decision without a majority rationale."[44] Moreover, whatever authority *Diaz* could have once provided, it has since been nullified. As further detailed below, the Louisiana Legislature effectively overruled *Diaz* through the enactment of multiple statutory provisions, making clear that, as a matter of law, "[t]he District Attorney's Office is not the State and the State is not liable for the acts of the District Attorney or his employees."[45]

As to Defendant's second assertion, the fact that district attorneys are discussed in Article V does not thereby make them "state" government officials. It makes them "public officials," but it does not necessarily follow that they are "state officials." The Louisiana Legislature has codified this distinction: "[w]hile all offices created by the constitution…are 'public offices', they are not all 'state offices,' as they include parish offices, municipal offices, district offices, and offices of political subdivisions."[46] As to which classification district attorneys fall under,

---

[42] *Jackson v. City of New Orleans*, 2012-2742 n.8 (La. 01/28/14); 144 So. 3d 876, 888
[43] 433 So. 2d 699, 701 (La. 1983).
[44] *Burge*, 187 F.3d 452, 469 n.8.
[45] *Gibson v. State*, 94-0476 (La. App. 4 Cir. 10/27/94); 644 So.2d 1148, 1150 (citing La. R.S. § 42:1441(A)); *see also* 1989 La. AG LEXIS 390, *9 (noting that the "legislature overruled Diaz's ruling").
[46] La. R.S. § 42:1441.3 (emphasis added).

the Louisiana Legislature has repeatedly designated district attorneys as local – rather than state – officials: La. R.S. §§ 42:62(9), 42:1441.3, and 42:1102 (2)(a)(vi) all refer to "district attorneys" as being "separate political subdivisions," a term statutorily defined as being a "unit of local government."

In short, Louisiana's Constitution and legislative provisions demonstrate clear legislative intent to designate district attorney's as local officials.

### c. The State of Louisiana is not liable for district attorneys' official acts

The *McMillian* Court's analysis also emphasized the fact that "tort claims brought against sheriffs based on their official acts…constitute suits against the State" as being "strong evidence in favor of the…conclusion that sheriffs act on behalf of the State…when acting in their law enforcement capacity."[47]

Consideration of Louisiana law compels the opposite conclusion. Under La. R.S. § 42:1441, "[t]he state of Louisiana shall not be liable for any damage caused by a district attorney…within the course and scope of his official duties."[48] Additionally, Louisiana Revised Statute § 1441.2, entitled "Nonimposition of master-servant liability on state by Civil Code Article 2320 and other laws for torts of <u>parish officials</u>," provides that:

> Civil Code Article 2320 and other laws imposing liability on a master for the offenses and quasi offenses of his servant shall not extend or apply to and shall not impose liability upon the state for the offenses and quasi offenses of any of **those public officers named in Article V, Sections 26**, 27, 28, and 29, and Article VII, Section 24, of the Constitution of Louisiana or any of their officers, deputies, assistants, employees, appointees, designees, or representatives.[49]

Importantly, Article V, Section 26 covers "[d]istrict attorneys." Additionally, La. R.S. § 13:5108.1, which describes "covered individuals" for whom the State can be held liable when

---

[47] *McMillian*, 520 U.S. at 789.
[48] La. R.S. § 421441(A).
[49] La. R.S. § 421441.2.

they commit a tort in the service of a state function, expressly commands that district attorneys are not to be considered "covered individuals."[50]

It is also important to note that that the enactment and amendment of these statutory provisions were the Louisiana Legislature's direct response to Louisiana Supreme Court decisions, like *Diaz v. Allstate Ins. Co.*[51], which determined the State should be held liable for the official acts of district attorneys.[52]

In short, by repeatedly emphasizing the fact that the State of Louisiana is not liable for the torts of district attorneys, the state legislature has made clear their understanding of district attorney's as local "parish officials" – not state officials – when acting in an official capacity.

**d.   District attorneys are virtually independent and autonomous local officials**

In *McMillian* the Court emphasized the fact that state-level officers – the governor, the attorney general, and state court judges – exerted direct control over the sheriff as being indicative that the sheriff represented state rather than the local government when performing his law enforcement function.[53] Specifically, the Court noted that sheriffs "must obey" the orders and directives "of any state court, even those outside his county"[54], emphasizing that "judges (who are state officers…) may order the sheriff to take certain actions even if the judge sits in a distant county." [55] And "most importantly," as the Court emphasized, the governor and the attorney general have "direct control over how the sheriff fulfills his law enforcement

---

[50] La. R.S. § 13:5108.1 (3)(b).

[51] *Diaz v. Allstate Ins. Co.*, 433 So.2d 699 (La. 1983).

[52] *See*, *e.g.,* 1989 La. AG LEXIS 390, *9 ("[t]he legislature overruled *Diaz*'s ruling that district attorneys and their employees were state employees by 1984 La. Acts No. 923, which amended R.S. 13:5108.2"); La. R.S. R.S. § 42:1441.4 (3) (discussing the legislature's "intent and purpose" of provisions, such as R.S. §§ 42:1441 and 42:1441.2, were to restore the "true legislatively intended meaning" to provisions regarding master-servant liability).

[53] *See McMillian*, 520 U.S. at 788-91.

[54] *Id.*, 520 U.S. at  789-90 (1997) (internal marks omitted).

[55] *Id.* at 789-90.

duty…[T]hey can direct the sheriff to investigate any alleged violation of law in their counties. And after proceeding promptly to complete this investigation, the sheriff must promptly write a report to the state official in charge of the investigation."[56] The Court then contrasted the state officers' ability to control the actions of sheriffs with the inability of local officials to do so.[57]

Louisiana's district attorneys, however, enjoy practically unfettered autonomy in performing their duties; they are not subject to the control of any state-level officers. Under Louisiana's Constitution, district attorneys are given charge of every criminal prosecution in their district.[58] In their <u>sole discretion</u>, the district attorney determines: what evidence to present to the grand jury;[59] whether to prosecute, regardless of the grand jury's determination;[60] which charges to bring;[61] and whether to dismiss an indictment, or a count therein.[62] As the Louisiana Supreme Court has emphasized:

> "The district attorney **has entire charge and control** of every criminal prosecution instituted or pending in his district and determines whom, when and how he shall prosecute. La. C.Cr.P. art. 61; *State v. Collins*, 242 La. 704, 138 So.2d 546 (1962); *State v. Jourdain*, 225 La. 1030, 74 So.2d 203 (1954). The district attorney is given **absolute discretion** in the institution of criminal charges…there is **no provision of law that defines or limits the type of cases a district attorney may prosecute**…"[63]

In short, the Louisiana Constitution, the Louisiana Legislature, and the Louisiana Supreme Court have made clear that a district attorney is considered a "virtually autonomous local government official" whose office constitutes "an independent local government entity."[64]

---

[56] *Id.* at 790-91 (internal marks omitted).
[57] *Id.*
[58] La. Const. Art. V, § 26.
[59] *See* La. C.Cr.P. Art. 442.
[60] La. C.Cr.P. Art. 384.
[61] *See* La R.S. § 14:4; La. R.S. § 16:1 (C).
[62] *See* La. C.Cr.P. Art 691.
[63] State v. Perez, 464 So.2d 737, 744 (La. 1985).
[64] *Burge*, 187 F.3d at 469-70.

The Defendant, however, points to the Constitutional provision referencing the Attorney General's ability to "supersede" a district attorney,[65] presumably as evidencing state-level control over the district attorney. Defendant's contention is misplaced in two regards.

First, this provision only authorizes the attorney general to act in the place of the district attorney; it does not authorize the attorney general to actually "control" the district attorney in the performance of their duties. But more importantly, the provision's legislative history makes clear it was intended to provide the district attorney greater autonomy and independence than previously enjoyed.

Prior to the Louisiana Constitution of 1974, the attorney general enjoyed "plenary" authority "to institute, prosecute, or intervene in a criminal proceeding."[66] The Louisiana Constitutional Convention of 1974, however, marked "a broad change in the philosophy of local government as formerly expressed by the 1921 document," where "[r]ather than granting local governmental subdivisions only such powers as were expressly granted them by the constitution or the legislature, the new [1974] constitution grants [local governments] broad residual powers."[67] Louisiana's district attorneys were no exception. As the Louisiana Supreme Court has noted, the "broad powers constitutionally granted to the district attorney" were "expanded even further by the Constitution of 1974."[68]

At the same time that it expanded the district attorney's authority, "[t]the Louisiana Constitution of 1974 limit[ed] the attorney general's authority."[69] This is highlighted by Article V, Section 8 of the 1974 Constitution, "the purpose" of which, "as the transcript of the

---

[65] R. Doc. 4-3 at p. 13 (citing LA. Const. Art. 4, § 8).
[66] *See State v. Neyrey*, 341 So.2d 319, 324 (La. 1976) (citing LA. Const. Art. VII, § 56 ).
[67] *Shreveport v. Kaufman*, 353 So.2d 995, 997 (La. 1977).
[68] *Bd. of Comm'rs v. Connick*, 94-3161 n.6 (La. 03/09/95); 654 So.2d 1073, 1077.
[69] *Neyrey*, 341 So.2d at 324.

constitutional convention proceedings reveal, was the curtailment of the attorney general's theretofore untrammeled authority to institute, prosecute, or intervene in a criminal case."[70] Under the new provision, the attorney general is authorized only to "advise and assist" in a particular prosecution "upon the written request of a district attorney."[71] And absent the district attorney's express written request, the attorney general may "supersede" in a prosecution only upon establishing "cause" to do so, and only after the court authorizes the supersession.[72]

Legal scholars have noted that:

"The power to institute criminal proceedings is now exclusively that of the district attorneys, subject only to supercession by the attorney general, which can be done only with court authorization. **The Constitution of 1974 resolved the jurisdictional conflict between state and local authority by weighing the scales heavily in favor of the local authority** subject to the check and balance of the attorney general's power to supersede for cause."[73]

Finally, another aspect of control identified by the Supreme Court in *McMillian* was the source of funding for the official in question, including both their salary[74] and payment of expenses.[75] The Court emphasized the fact that the local Alabama county, "lacked discretion to deny the sheriff operational funds below what was reasonably necessary" and therefore, could not wield financial pressure on the official. Conversely, under Louisiana law, it is the local government that is afforded greater discretion in denying or granting the district attorney's requests for funding, thereby exerting greater influence and control over the district attorney's actions.

---

[70] *Id*, at 323-24
[71] La. Const. Art. IV, § 8.
[72] *Id.*
[73] Charles J. Yeager, *The Power of the Attorney General to Supercede a District Attorney: Substance*, Procedure & Ethics., 51 La. L. Rev. 733, 734 (1991).
[74] *McMillian*, 520 U.S. at 791.
[75] *Id.* at 791.

While the district attorney's budget is comprised of contributions from both the state and local government[76], the local government has historically provided the bulk of the funding.[77] Moreover, the local government – more so than the State – enjoys more discretion in the amount of funding to provide to the district attorney's office. The State is legislatively restricted from reducing the district attorney's salary and benefits during his term in office.[78] The district attorney's budget, on the other hand, is proposed by the New Orleans Mayor, and "must be approved by the City Council of New Orleans"[79] on an annual basis. Accordingly, while the State cannot exert immediate influence on the district attorney's practices or policies during their term in office, the local government is well-equipped to do so. One relatively recent example of

---

[76] "The operations of the DA's Office are highly reliant upon appropriations from the City of New Orleans and from the State of Louisiana." Financial Statements and Independent Auditor's Report, District Attorney of the Orleans Judicial District, December 31, 2014 and 2013, June 30, 2015, at 11, https://app.lla.state.la.us/PublicReports.nsf/AA6CFA5C0DC02C6386257EA4006A87A0/$FILE/0000995B.pdf.

[77] For instance, "[d]uring 2014 and 2013, the District Attorney has recognized $3,750,730 and $3,740,335, respectively, from the State for On-Behalf Payments" and "the District Attorney has recognized $6,271,671 and $6,271,671 during 2014 and 2013, respectively, for appropriations from the City of New Orleans." Financial Statements and Independent Auditor's Report, District Attorney of the Orleans Judicial District, December 31, 2014 and 2013, June 30, 2015, at 36 (see also 18), https://app.lla.state.la.us/PublicReports.nsf/AA6CFA5C0DC02C6386257EA4006A87A0/$FILE/0000995B.pdf. In 2020, the state contributed $4,077,736 in On-Behalf Payments to OPDA and $154,679 towards pensions for OPDA staff; the City contributed $7,178,029 in appropriations. Financial Statements and Independent Auditor's Report, District Attorney of the Orleans Judicial District, December 31, 2020, Oct 29, 2021, at 47 (see also 18), https://app.lla.la.gov/publicreports.nsf/0/637e6ff889cffe35862587880070e359/$file/00024f16.pdf.

[78] *See* La. Const. Art. 5 § 31 ("Reduction of Salaries and Benefits Prohibited - Section 31: The salary and retirement benefits of an attorney general, district attorney, sheriff, coroner, or clerk of the district court shall not be diminished during his term of office.").

[79] Financial Statements and Independent Auditor's Report, District Attorney of the Orleans Judicial District, December 31, 2014 and 2013, June 30, 2015, at 27, https://app.lla.state.la.us/PublicReports.nsf/AA6CFA5C0DC02C6386257EA4006A87A0/$FILE/0000995B.pdf.

such influence occurred in response to former Orleans District Attorney Leon Cannizzaro's practice of issuing fake subpoenas to compel witnesses to testify. Following revelation of the practice, the City Council cut the district attorney's budget and Cannizzaro promptly ceased the controversial practice.[80]

Under Louisiana law, a district attorney enjoys virtually unhindered independence and autonomy in performing their official duties. And to the extent that influence and control is exerted on the office, it is done so by local government officials – not State officials. Consideration of the amount of control exerted – or not – on the district attorney by the various levels of government make clear that a Louisiana district attorney is a "virtually autonomous local government official" whose office constitutes "an independent local government entity."[81]

### 3.  Other courts in this district have correctly denied Defendant's Motion to Dismiss

Defendant correctly acknowledges that "[f]our other sections of this Court have previously rejected the same arguments presented in this motion, finding them to be foreclosed by [*Burge v. Parish of St. Tammany*]." [82] Defendant proceeds to then dedicate a third of his brief to argue that these four rulings "are erroneous…and should not be followed by this Court."[83]

But Defendant fails to appreciate that Williams does not ask this court to "merely follow what other [district court] judges have done."[84] Instead, Williams asks that this Court follow binding precedent set forth by the Supreme Court and the Fifth Circuit Court of Appeal. And

---

[80] "The day The Lens reported on the [improper subpoena] practice, Cannizzaro's office announced it would stop . . . . Part of this year's budget cut was a check on Cannizzaro's practices." Charles Maldonado, *Cannizzaro receives lashing from city council for fake subpoenas, jailing witnesses and other hardball tactics*, THE LENS, Sep. 20, 2017, https://thelensnola.org/2017/09/20/cannizzaro-receives-lashing-from-city-council-for-fake-subpoenas-jailing-witnesses-and-other-hardball-tactics/.
[81] *Burge*, 187 F.3d at 469-70.
[82] R. Doc. 4-2 at p. 1.
[83] R. Doc. 413 at pp. 20-31.
[84] R. Doc. 4-2 at p. 2.

even a casual reading of Defendant's descriptions of the four other court decisions reveals numerous instances in which Defendant ignores or mischaracterizes what is otherwise unfavorable case law, Williams submits this response to briefly highlight some of the more egregious instances.

### *Floyd v. Dillmann*[85]

Defendant first criticizes Judge Milazzo's ruling for following *Burge* despite purportedly acknowledging, but not disputing, his argument that "the analysis in *Daves* differed from the analysis in *Burge* in critical ways."[86] But, in fact, the court flatly rejected Defendant's contention that the analysis in *Daves* undermined *Burge*: "*Daves* did not create a new analysis, nor does its result have any relevance on what Louisiana law provides as to a district attorney making *Brady* policy."[87]

Defendant is also incorrect in attributing any significance to the fact that the court "acknowledged and did not dispute" Defendant's argument that "*Burge* did not directly answer the critical question required under *Daves*."[88] The court in no way endorsed Defendant's argument but instead, merely assumed the point *arguendo*.  And ultimately, Judge Milazzo concluded that *"Burge* does not leave this Court any room to reach a contrary result" because the court "cannot say that a district attorney is acting on behalf of the State in enacting *Brady* policies and therefore cannot be liable under § 1983 without undermining *Burge*'s holding that a

---

[85] *Floyd v. Dillmann et al.,* No. 19-cv-8769, 2023 U.S. Dist. LEXIS 36471 (E.D. La. March 6, 2023) (Milazzo, J.).
[86] R. Doc. 4-3 at p. 22.
[87] *Floyd*, 2023 U.S. Dist. LEXIS 36471, at *12.
[88] R. Doc. 4-3 at p. 23.

district attorney can be liable under § 1983 as a local entity for its unconstitutional Brady policies."[89]

Moreover, as detailed *supra*, *Burge* did squarely address the "critical question" raised in *Daves*: whether the district attorney acts on behalf of the state or a local government entity when creating policies relating to the disclosure of *Brady* materials. The Fifth Circuit in *Burge* began its analysis by acknowledging "Supreme Court's cases on the liability of local governments under § 1983 instruct us to ask whether governmental officials are policymakers for the local government in a particular area, or on a particular issue."[90]

And Defendant's criticism of the court for referring to *Kimble v. Jefferson Parish Sheriff's Office*[91] ignores the obvious significance of *Kimble*. In *Kimble*, a case decided over a year after *Daves*, the Fifth Circuit had a clear opportunity to assess the impact of *Daves* on *Burge*. The Fifth Circuit, however, in no way suggested *Daves* had undermined *Burge*. To the contrary, the court cited *Burge* and found that the Jefferson Parish District Attorney's Office was a local government entity.[92]

Finally, Defendant's cursory argument that the claims must be dismissed because Williams "should have sued Orleans Parish" not Williams, in his official capacity, should be rejected out of hand. On February 15, 2023, *i.e.,* after *Burge*, *Daves*, and *Kimble*, the Fifth Circuit in *Armstrong v. Ashley*, said:

> "Louisiana law does not permit a district attorney's office to be sued in its own name." *Hudson v. City of New Orleans*, 174 F.3d 677, 680 (5th Cir. 1999). Thus, when attempting to sue a Louisiana DA's office under *Monell*, **the current DA, rather than the office, is the proper defendant**. *Id*. Any former DA's actions at

---

[89] *Floyd*, 2023 U.S. Dist. LEXIS 36471, at *10 n. 34.
[90] *Burge*, 187 F.3d at 468 (emphasis added).
[91] *Kimble v. Jefferson Par. Sheriff's Office*, 2023 U.S. App. LEXIS 2991 (5th Cir. Feb. 7, 2023) (unpublished) (per curiam).
[92] *Id*. at *8.

the time of Ford's prosecution are imputed to the current DA for purposes of *Monell*."

*Armstrong v. Ashley*, 60 F.4th 262, 268 n.4 (5th Cir. 2023).

In short, Judge Milazzo's ruling was legally correct. Defendant provides no legitimate basis for finding otherwise.

### *Smith v. Williams*[93]

Defendant next turns to the decision issued by Chief Judge Nannette Jolivette Brown in *Kaliegh Smith v. Jason Williams et al*. In her decision, Judge Brown determined both that (1) *Burge* "clearly answers the issue presented in the instant motion"[94]and (2) that "an analysis of the Louisiana Constitution, statutory law, and case law reaffirms" that "it cannot be said that Louisiana law empowers Louisiana district attorneys to make policy on behalf of the State in their *Brady* compliance functions," adding that "a Louisiana district attorney acts as an autonomous local government official in the exercise of his evidence disclosure duties."[95]

Defendant primarily attempts to challenge the second portion of Chief Judge Brown's decision by arguing that she erroneously considered the Louisiana Legislature's endeavors to make clear that the State is not vicariously liable for the actions of district attorneys.[96] Defendant contends that the issue of "whether the state is liable for actions of an official" is "unimportant and potentially 'misleading' in determining 'the level of government for which an official was acting," going so far as to cite *McMillian* in support of its argument.[97]

---

[93] *Smith v. Williams*, No. 22-cv-1550, 2023 U.S. Dist. LEXIS 32662, at *1 (E.D. La. Feb. 28, 2023) (Brown, C.J.).
[94] *Id.* at *19.
[95] *Id.* at *25.
[96] R. Doc. 4-3 at pp. 25-27.
[97] *Id*.

But the Supreme Court in *McMillian* <u>did consider</u> the issue of vicarious liability, emphasizing both that "tort claims brought against the sheriff…constitute suits against the State, not suits against the sheriff's county" and that "Alabama counties are not liable under a theory of *respondeat superior* for a sheriff's official acts that are tortious."[98] Not only did the Court consider the issue of vicarious liability to be relevant to its analysis, the Court regarded it as <u>"strong evidence."</u>[99]

Equally unavailing is Defendant's assertion that Chief Judge Brown's decision "appears to have made an 'all or nothing' determination of whether Louisiana district attorneys are state officials or local officials, rather than considering whether district attorneys act on behalf of the state in the specific area of criminal prosecutions and disclosure of evidence to criminal defendants."[100]

First, Judge Brown did tailor her decision to the specific function at issue: "Louisiana law does not designate Louisiana district attorneys as state policy  makers <u>with respect to their decision making in evidence disclosure policies</u>" and "this Court finds  that Louisiana statutory law and its historical developments designate that a Louisiana district attorney acts as an autonomous local government official <u>in the exercise of his evidence disclosure  duties</u>."[101]

And to the extent Defendant takes issue with the "court's reasoning" (*i.e.* its reference to the issue of vicarious liability), it bears re-emphasizing that the Supreme Court in *McMillian* considered the issue of vicarious liability to be "strong evidence" in its determination as to

---

[98] *McMillian*, 520 U.S. at 789.
[99] *Id.*
[100] R. Doc. 4-3 at pp. 27-28.
[101] *Smith*, 2023 U.S. Dist. LEXIS 32662 at *24-25 (emphasis added).

whether an official acts on behalf of the state or local government when performing a specific function.[102]

In short, Defendant cannot point to an actual legal error in the court's reasoning: he simply objects to the result.

### *Reeder v. Williams*[103] and *Jones v. Williams*[104]

Defendant's criticisms of the rulings issued by Judge Zainey and Judge Ashe in *Reeder* and *Jones*, respectively, offer no more than a rehashing of the arguments raised against the rulings in *Floyd* and *Smith*.[105] However, because Defendant reasserts that *Daves* "established a general methodology that applies to other officials as well,"[106] it bears repeating that *Daves* did not create a new methodology or analysis; it simply applied the pre-existing *McMillian* methodology to members of the judiciary under Texas law – an analysis that does not undermine or abrogate the Fifth Circuit's application of the *McMillian* methodology to district attorneys under Louisiana law.

Defendant's assertion that the courts in *Floyd*, *Smith*, *Reeder*, and *Jones* all erred is devoid of merit and should be rejected.

4. **District attorneys are locally autonomous in implementing and conducting inter-office training and supervision**

Finally, it should be noted that Defendant's argument focuses solely on whether District Attorney Connick was acting as a state official when making any decisions and policies

---

[102] *See McMillian*, 520 U.S. at 789.

[103] *Reeder v. Williams*, No. 22-cv-4614, 2023 U.S. Dist. LEXIS 58818, at *1 (E.D. La. Apr. 4, 2023) (Zainey, J.).

[104] *Jones v. Williams*, No. 22-cv-5097, 2023 U.S. Dist. LEXIS 75876, at *7 n.29 (E.D. La. May 2, 2023) (Ashe, J.)

[105] R. Doc. 4-3 at pp. 30-31.

[106] R. Doc. 4-3 at pp 30-31.

concerning the disclosure of evidence to the defense.[107] Defendant fails to meaningfully address the alternative basis of liability in Williams's complaint: District Attorney Connick's failure to train and supervise the assistant district attorney's concerning their *Brady* obligations. Although there should be no question that a district attorney is a local official when acting in an inherently administrative role in implementing and conducting intra-office trainings and supervisions, the Court need not address it; because the Defendant has failed to meaningfully brief the issue, it is considered waived.

## CONCLUSION

Wherefore, for the foregoing reasons, Defendant Jason Williams's Motion to Dismiss must be dismissed and Dwayne Williams's action permitted to proceed.

Dated: August 28, 2023.

Respectfully submitted,

*/s/Kelly Patrick Mitchell*
Herbert V. Larson, Jr., La. Bar No. 8052
Kelly Patrick Mitchell, La. Bar No. 37807
LARSON & MITCHELL, ATTORNEYS AT LAW
700 Camp Street
New Orleans, Louisiana 70130
(504) 528-9500
hvl@hvllaw.com
kpm@hvllaw.com

*Attorneys for Plaintiff Dwayne Williams*

## CERTIFICATE OF SERVICE

This certifies that I electronically filed the foregoing motion by using the CM/ECF system, thereby sending a notice of electronic filing to the appropriate counsel of record.

Date: August 28, 2023.

*/s/Kelly Patrick Mitchell*
Kelly Patrick Mitchell

---

[107] R. Doc. 4-3 at p. 11.