**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

DWAYNE WILLIAMS,

     *Plaintiff*,

v.

JASON WILLIAMS, in his official capacity,
and ABC INSURANCE COMPANIES 1-10,

     *Defendants*.

Civil Action No. 23-01922

Section O
Judge Brandon S. Long

Division 1
Magistrate Judge Janis van Meerveld

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO
EXCLUDE EXPERT TESTIMONY CONCERNING LOST WAGES**

Jason R. Williams, in his official capacity as Orleans Parish District Attorney ("OPDA"),
through undersigned counsel, respectfully submits the following reply to the opposition filed by
Plaintiff Dwayne Williams, Doc. No. 104, and in further support of OPDA's motion seeking to
exclude the testimony of the Plaintiff's retained expert witnesses, Elizabeth Martina and Harold
Asher, concerning lost wages and employment-related fringe benefits, Doc. No. 80.

**I.**     **Mr. Williams's lost income calculation includes years when he would have been
incarcerated for other crimes, regardless of whether he was ever prosecuted or
convicted of murder.**

Mr. Williams does not dispute that he was "serving a five-year sentence for another
conviction at the same time he served the first part of his life sentence" for murder. Doc. No. 104
at 13. Nor does he dispute that his experts include purported lost income from those five years in
their damages calculation. He argues, however, that "[a]t best, this point goes to weight and not
admissibility," and that the jury should be allowed to decide whether to make a "deduction" for
the years when he was concurrently incarcerated for another crime. *Id.* But any calculation that

1

includes damages for harm that was clearly and indisputably not caused by the defendant's alleged wrongdoing is necessarily unreliable and must be excluded.

Damages are recoverable by Mr. Williams in this lawsuit only to the extent that they fairly compensate him for harm that was actually and proximately caused by the alleged *Brady* violation in his prosecution for murder.[1] If Mr. Williams would have been incarcerated for five years for another crime, regardless of whether he was ever prosecuted for or convicted of murdering Laston Clark, he plainly cannot prove that a *Brady* violation in the murder case was actual, but-for, proximate cause of his incarceration for those five years. Mr. Williams suggests that it is debatable, or unsettled, whether damages are recoverable for years when a plaintiff was "concurrently" imprisoned on a separate, unchallenged, conviction. *See* Doc. No. 104 at 13. But based on straightforward principles of causation, such damages are clearly not recoverable. In *Olsen v. Correiro*, 189 F.3d 52, 66 (1st Cir. 1999), for example, the First Circuit discussed the situation "in which a defendant serves a period of imprisonment for two crimes or two counts of conviction that result in the imposition of concurrent sentences." The First Circuit explained:

> If one conviction is vacated, the defendant has nevertheless been imprisoned pursuant to a valid sentence. He may not then bring a § 1983 action for damages for his imprisonment. In such a case, it is clear that whatever the wrongful act involved in securing the invalid conviction, that act was not the "but for" cause of the incarceration, because without that act the plaintiff would have been incarcerated in any event pursuant to the valid conviction.

*Id.* (footnote omitted).

---

[1] *See, e.g.*, *Murray v. Earle*, 405 F.3d 278, 290 (5th Cir. 2005) ("Section 1983 does require a showing of proximate causation, which is evaluated under the common law standard.").

**II.**   **Fifth Circuit jurisprudence requiring a lost wages calculation to be based on "the plaintiff's gross earnings at the time of the injury" is fully applicable in a case involving alleged wrongful imprisonment.**

Mr. Williams does not dispute that OPDA has accurately set forth the principles on calculation of lost wages set forth in *Culver v. Slater Boat Co.*, 722 F.2d 114 (5th Cir. 1983), and related jurisprudence. That jurisprudence "requires the court to use the plaintiff's gross earnings at the time of the injury" in calculating lost wages. *Hernandez v. M/V Rajaan*, 841 F.2d 582, 585 (5th Cir. 1988). He argues, however, that this jurisprudence applies only to "maritime on-the-job injuries" and "claims by the injured person against their employer." Doc. No. 104 at 2. He suggests that calculation of damages due to alleged wrongful conviction is fundamentally different and "is not limited to a formula." *Id.*

However, there is no conceptual difference between a lost wages calculation in a personal injury case and a lost wages calculation in a wrongful incarceration case. Indeed, Mr. Williams himself argues that "the starting point for measuring compensatory damages in any § 1983 action is the common law of torts," and that the damages awarded should "compensate injuries caused by the constitutional deprivation." Doc. No. 104 at 6 (quotation omitted). This is correct, and it contradicts Mr. Williams's assertion that the general rules for calculating lost income in tort cases should not apply to him.

In a personal injury case involving lost wages, the plaintiff typically alleges that he was prevented from working and earning income (or restricted to working a reduced capacity) for some period of time as a result of an injury. The plaintiff seeks compensation for income he would have earned during that time, but for the injury. The plaintiff may also allege that his ability to earn income in the future has been reduced as a result of the injury, and seek compensation on that basis. Mr. Williams's lost wages claim is exactly the same. He alleges that actions by OPDA caused him to be incarcerated, and that during the period of his incarceration, he was unable to

3

work and earn income. He seeks compensation for the income he allegedly would have earned during that time, but for his incarceration. He also alleges that his ability to earn income in the future has been reduced as a result of his incarceration, because he would otherwise have more work experience and would therefore be able to earn higher wages. This theory of damages fits perfectly into the Fifth Circuit's established lost wages methodology.

Indeed, in another case based on alleged wrongful conviction, Mr. Williams's expert confirmed that his methodology for calculating lost wages due to allegedly wrongful incarceration is the same methodology that he uses in other lost wages cases. Mr. Asher testified that he has calculated "lost wages as the result of an injury" hundreds or thousands of times in the course of his career.[2] Mr. Asher further testified that calculating lost wages in this case "as a result of an allegedly wrongful incarceration" involves "the same" process he uses in other lost wages calculations.[3]

In *Hernandez*, 841 F.2d at 585, a longshoreman was "permanently paralyzed from the chest down" as a result of an accident and consequently unable to continue his employment. As a measure of lost-wage damages, the district court calculated the expected income and fringe benefits he would have earned over the course of his expected work-life (30 years) but for the injury. *Id.* at 587. The Fifth Circuit made clear that in calculating these lost wages, a court must "use the plaintiff's gross earnings at the time of the injury" rather than a hypothetical figure, such as "the average longshoreman's wage rate." *Id.* The Fifth Circuit also held that the district court "erred by adding fringe benefits and seniority in the absence of evidence that [the plaintiff] was

---

[2] Exhibit 8, Asher Depo., at 17.

[3] Exhibit 8, Asher Depo, at 18–19. Mr. Asher testified that "[s]ometimes there are additional factors," such as "households, services [sic] that have been lost," but that he had not included that in this case. *Id.* at 19.

entitled to those benefits while he was working part time." *Id.* There is no reason why the law should restrict an injured longshoreman to a recovery of lost wages consistent with his past earnings, while allowing a wrongfully convicted former prisoner to recover speculative, hypothetical earnings that have no relation to any wages he ever earned before going to prison.

In *Reeder v. Williams*, No. 22-cv-46142025 WL 1142179, at *3 (E.D. La. Apr. 17, 2025), another section of this Court held that similar expert testimony by Mr. Asher and Ms. Martina, concerning lost wages due to alleged wrongful incarceration, was not "so irrelevant and unreliable as to require exclusion." The Court acknowledged that the plaintiff's post-incarceration employment "arguably . . . provide[s] a highly speculative foundation" for the lost wages calculation, in light of his "extensive criminal history" and "sketchy employment history" before his incarceration. *Id.* However, the Court saw a "fundamental difference between a discrete injury to someone's person that prevents him prospectively from performing the employment that he had been performing up until the time of an injury, and an injury like a wrongful conviction that for every day the person is incarcerated in violation of his rights may have prevented that person from making a positive life-changing decision to do something different." *Id.* at *4.

OPDA respectfully disagrees with this analysis. For *any* person who suffers some harm impairing his ability to work—due to a disabling physical injury, or incarceration, or some other reason—it is *always* possible that, if he had continued to work, he might have obtained a better job earning far more than he was earning at the time of the harm. The paralyzed longshoreman in *Hernandez*, no less than Mr. Williams or Mr. Reeder, may very well have made "a positive life-changing decision to do something different" if he had not been paralyzed by his injury. Yet the Fifth Circuit has made clear that the speculative possibility of such a thing happening is not sufficiently reliable to support a claim for lost wages. In other words, the Fifth Circuit's

5

jurisprudence reflects a judicial determination that facts about the past are inherently more reliable than speculation about an imagined future. That principle applies just as fully to constitutional torts as it does to more "ordinary" torts.

Other than the decision in *Reeder*, Mr. Williams cites no jurisprudence supporting his experts' speculative approach. Mr. Williams cites the vacated panel decision in *Thompson v. Connick*, 553 F.3d 836 (5th Cir. 2008), *vacated at* 578 F.3d 293 (5th Cir. 2009), which says nothing at all about the methodology for calculating lost wages in a case alleging wrongful incarceration. Indeed, the verdict being appealed did not even include a specific award for lost wages. Mr. Williams also highlights two Louisiana appellate decisions that mention awards of lost wages based on allegedly wrongful incarceration.[4] Neither case includes any discussion of the methodology for calculating lost wages. And notably, in both cases, the judgment in favor of the plaintiff was reversed on appeal. *See Jenkins*, 801 So. 2d at 488; *Gibson v. State*, 758 So. 2d 782, 785 (La. 2000).

Mr. Williams relies on *Burton v. City of New York*, 630 F. Supp. 3d 586 (S.D.N.Y. 2022) as an "extensive and thorough discussion of damages in a wrongful conviction and imprisonment case." Doc. No. 104 at 8–9. Yet that extensiveness and thoroughness did not include any adversarial testing by opposing counsel—the opinion was based on a default judgment. *Burton*, 630 F. Supp. 3d at 586. Mr. Williams also relies on *Peacock v. City of Rochester*, No. 13-cv-6046, 2016 WL 4150445, at *4 (W.D.N.Y. Aug. 5, 2016), another case considering lost wages as a result of wrongful incarceration. In that case, the lost wage calculation "assumed a wage base of $8,241, which is what [the plaintiff] earned in 1975 [the year before his arrest] working as a cook." *Id.*

---

[4] *See* Doc. No. 104 at 8 (citing *Jenkins v. Baldwin*, 801 So. 2d 485 (La. App. 4th Cir. 2001) and *Gibson v. State*, 731 So. 2d 379 (La. App. 4th Cir. 1999)).

Thus, consistent with *Culver*—and contrary to Mr. Williams's approach—the calculation in *Peacock* started with the plaintiff's actual pre-incarceration earning history. In any event, even if decisions of Louisiana state courts and other federal districts would support an alternative methodology for calculating lost wages, the Fifth Circuit's jurisprudence would nevertheless be controlling.

Mr. Williams cites *Bierria v. Genesis Energy, LLC*, No. 20-cv-993, 2021 WL 3633474, at *1 (E.D. La. Aug. 17, 2021), in which the plaintiff had been employed as a tankerman trainee on a ship for six months when he was injured. His expert's lost wages calculation was challenged as "speculative and unreliable" because it was "premised upon plaintiff's being promoted through the ranks over his working life." *Id.* at *1–2. The Court found that there was evidence in the record to support the expert opinion, specifically noting that the plaintiff was "hired into a position that involved a clear career path, established by his employer, leading to promotions"; that he had "previous automotive mechanic experience, and was actually working towards the next employment level at Genesis at the time of his accident"; and that there had been no negative reports about his work during his employment so far. *Id.* at *2. However, this analysis only serves to illustrate the extent to which Mr. Williams's lost wages calculation is ***not*** supported by any evidence in the record. Unlike the situation in *Bierria*, Mr. Williams, at the time of his arrest for murder at the age of 23, was not working at all and was certainly not progressing along a "clear career path." Rather, he was a convicted felon with an eighth-grade education, a substantial history of arrests and incarceration, and a negligible history of gainful employment, who had already experienced difficulties in finding a "decent job" due to his background. *See* Doc. No. 80-1 at 12.

**III.    Mr. Williams's lost wages calculation does not deduct expenses that he would have had to pay if he had not been in prison.**

As explained in OPDA's initial brief, one of the required steps for calculating a "lost income stream" is to "subtract amounts the wage earner would have been required to pay, such as income tax and work expenses." *Culver v. Slater Boat Co.*, 722 F.2d 114, 117 (5th Cir. 1983). Mr. Williams argues that this "may or may not be a correct statement of law in this case," Doc. No. 104 at 14, but he offers no reason—based on law, logic, or general principles of justice—why a plaintiff alleging wrongful imprisonment should be treated differently from other tort plaintiffs. This requirement in *Culver* reflects the basic principle that tort compensation should put the plaintiff in the position he would have been in but for the alleged tortious conduct. Allowing a plaintiff to recover all of the income he allegedly would have received, while ignoring all of the expenses he would have incurred, would put the plaintiff in a much *better* position.

Mr. Williams also argues that it is unreasonable to expect his expert to calculate the expenses he would have incurred but for his incarceration, and that OPDA should have hired its own expert to perform such a calculation. *See* Doc. No. 104 at 14. But expert witnesses are not supposed to be hired-gun advocates for one party or the other, and their ability to testify is premised on being able to fairly and accurately explain complex concepts for the benefit of the jury. Mr. Williams's experts cannot simply present half of a calculation that would increase Mr. Williams's damages figure and omit the other necessary half that would reduce it—such an opinion is necessary unreliable. Mr. Asher presumably would not perform a business valuation that calculates the business's assets while entirely ignoring its liabilities. Nor should he be allowed to present an economic damages calculation here that estimates Mr. Williams's lost income while ignoring his avoided costs and expenses.

Notably, Mr. Williams cites the decision in *Reeder* in support of his experts' methodology but omits that the Court required Mr. Asher to amend his report to deduct avoided expenses:

> [OPDA] takes issue with the fact that Reeder's lost wage/benefit numbers are based on straight wages only and do not account for expenses that Reeder would have sustained had he been out of prison and working as an electrician. To the extent Reeder argues in his opposition (the Court is not clear on this point) that such reductions are not applicable in constitutional tort cases where lost wages/benefits are being sought, the Court does not agree. Reeder must have Asher's report amended . . . to reduce the lost wages/benefits numbers by an appropriate discount for expenses that would have been incurred.

*Reeder*, 2025 WL 1142179, at *4.

## CONCLUSION

For the reasons set forth above and in OPDA's initial brief, the proposed expert testimony by Elizabeth Martina and Harold Asher concerning Mr. Williams's lost income and fringe benefits should be excluded.

Respectfully submitted,

*/s/ Matthew J. Paul*
W. Raley Alford, III, 27354
Matthew J. Paul, 37004
Inga C. Petrovich, 31284
STANLEY REUTER ALFORD
  OWEN MUNSON & PAUL, LLC
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: (504) 523-1580
Facsimile:  (504) 524-0069
wra@stanleyreuter.com
mjp@stanleyreuter.com
icp@stanleyreuter.com

*Counsel for Jason R. Williams (in his official capacity as Orleans Parish District Attorney)*

9