HAROLD ASHER on 08/29/2024

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

*************************************************

KUANTAY REEDER,          * Civil Action No. 22-04614
                         *
    Plaintiff,           * Section A
                         * Judge Jay C. Zainey
                         *
v.                       * Division 1
JASON WILLIAMS, in his   * Magistrate Judge
official capacity, and   * Janis van Meerveld
ABC INSURANCE COMPANIES  *
1-1,                     *
                         *
    Defendants.          *
*************************************************

          The deposition of HAROLD ASHER, taken on

Thursday, August 29, 2024, commencing at

9:28 a.m., at 433 Metairie Road, Suite 251,

Metairie, Louisiana 70005.


                    * * *


**EXHIBIT**

**8**

Q.   You said it's a difference between what Ms. Martina represented that he would earn over the rest of his work life and what?

A.   Less what he's anticipated to make now, that he's actually going to make, based upon what he is making or was making.  We didn't have 2024 information, but we took the 2023 information and grew that at inflation.

And once again, the 2023 information on the self-employment component, we did not have any expenses to offset that, which is the conservative way to do that as an offset.  And by "conservative," it perhaps underestimates his loss.

Q.   Have you ever calculated lost wages as the result of an injury before?

A.   Yes.  Hundreds -- hundreds or thousands of times.

Q.   It's a very common thing to do in litigation, correct?

A.   Well, sometimes litigation.  Sometimes it's pending litigation.  It doesn't always -- I guess it does result in a trial.  Sometimes parties resolve itself.  But we get involved in hundreds of personal injury cases a year.

And over my career I've done thousands of them representing the plaintiff and the defendant.  Same methodology, same assumptions that you use for work life and discount rates, the sources for work life and discount rates, and growth rates.  So this is all standard, peer accepted.  It's the way I would have done it had you hired me.  Same methodologically -- methodological approach.

Q.    You anticipated my questions coming.  So have you ever calculated lost wages as a result of an allegedly wrongful incarceration before?

A.    Maybe once or twice.

Q.    Do you recall when that was or what the cases were?

A.    I'm not sure.  It's not the first time I've done this, and I've been doing this work for over 40 years.  So I think I've been on both sides, plaintiff and defense, on just about every type of situation.

Q.    In your understanding.  Is the process generally the same here as with any loss wage calculation, or is it fundamentally different in some way?

A.    No, it's the same.

Q.   Same?

A.   Sometimes there are additional factors. We do households, services that have been lost. We have not done that.

Q.   So what is the start date for the calculation of the past lost wages?

A.   I want to say it's the date of incorporation -- incarceration.  And I think that would have come -- maybe it was the year following his date of incarceration.

Q.   So page one of your report under the Earnings Capacity section, you say age 19 through age 23.  Does this mean that you're starting the calculation as of when Kuantay Reeder was 19 years old?

A.   Yes.

Q.   Yes?

A.   I don't know that was on his birthday, so I'll give you a hypothetical.  If his birthday was in April and he was incorporated in October, we would have started it -- I think we started it the next year, January 1st of the next year.  So I don't think -- I think we did a full year for his first year.

Q.   You would need a precise date to run the