**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| DWAYNE WILLIAMS, | Civil Action No. 23-01922 |
| *Plaintiff*, | |
| | Section O |
| v. | Judge Brandon S. Long |
| | |
| JASON WILLIAMS, in his official capacity, | Division 1 |
| and ABC INSURANCE COMPANIES 1-10, | Magistrate Judge Janis van Meerveld |
| | |
| *Defendants*. | |

**OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE***
**TO PRECLUDE TESTIMONY FROM JASON WILLIAMS**

Jason R. Williams, in his official capacity as Orleans Parish District Attorney ("OPDA"), through undersigned counsel, respectfully submits this opposition to Plaintiff Dwayne Williams's motion seeking to preclude testimony by District Attorney Jason Williams about "how or why policies or practices were implemented at [OPDA] under former District Attorney, Harry Connick," Doc. No. 85. The Plaintiff's request is odd, considering that, in his own initial disclosures, he has alleged that DA Williams is likely to have discoverable information about OPDA's *Brady* practices and customs that the Plaintiff may use to support his claims.[1] In any event, the request is without merit and should be denied.

The Plaintiff argues that DA Williams lacks personal knowledge of such policies and practices because he never worked as a prosecutor under Mr. Connick. However, the Plaintiff ignores that DA Williams worked as a criminal defense lawyer in Orleans Parish for many years, including during Mr. Connick's administration, and served as a *pro tempore* judge in Orleans Parish Criminal District Court in 2003, only months after the end of Mr. Connick's tenure. DA

---

[1] *See* Exhibit 1, Excerpt of Plaintiff's Ninth Supplement to Initial Disclosures.

1

Williams therefore has firsthand knowledge of prosecutorial discovery practices that he directly observed.

For example, DA Williams has testified that his experience, from approximately 1996 onward, "was that [Assistant District Attorneys] would provide a discovery packet, and all the discovery in their possession at arraignment or shortly after arraignment if there was a problem getting things copied and getting it collated. And they would also routinely provide any other information that was discovered at a later date by the detectives. They would provide that in court and to the defense attorneys."[2] He further explained: "[T]he practice that I observed and experienced was prosecutors in Orleans Parish from '98 on would turn over that evidence as close to arraignment as possible regardless of what the defense attorney had filed. It wasn't in response to motions that were filed."[3] DA Williams explained that he never encountered suppression of evidence by prosecutors:

> I can tell you that in my time as a judge, I didn't witness that. And in my time as a prosecutor, I mean as a defense attorney before I was a prosecutor, the ADAs that I worked with were very aware of their Brady obligation between 1998 and when I took office. ADAs would even call if some information presented itself over the weekend during trial when they were going through with their case file or talking to the detectives in preparation. The detectives said, oh, I had some notes on this case I found in my garage. They would call the court and call to let me know that this was found. . . . [T]he ADAs I worked with were pretty diligent about turning things over. And at some point, I don't remember if it was the end of the Connick administration or the beginning of the Jordan administration, they even created a form that was a table of contents or an affidavit of receipt of the discovery materials that would list out what was in it, what was missing, what was outstanding. . . . So firsthand knowledge, my experience I did not—I was not a victim of it as a defense attorney.[4]

---

[2] Exhibit 2, Depo. of Jason Williams, at 189–190.

[3] Exhibit 2, Depo. of Jason Williams, at 190.

[4] Exhibit 2, Depo. of Jason Williams, at 122–124.

DA Williams even described personally meeting with Mr. Connick on multiple occasions as a defense lawyer, to discuss potential plea deals for his clients.[5]

The Plaintiff also ignores that, as District Attorney, DA Williams has overseen the review of hundreds of old convictions by his Civil Rights Division.[6] He testified that, "even where there have been Brady violations [in these cases], they appear to be negligent or accidents due to the volume of cases or the workload," and that he has "not seen patterns or policies that were put in place encouraging attorneys to violate discovery obligations in an effort to get a conviction."[7] He also explained: "I have not seen evidence that Mr. Connick or any of the prosecutors before me created or tried to establish a win at all costs culture."[8]

The Plaintiff concedes that DA Williams "is an important fact witness in this case." Doc. No. 85-2 at 4. OPDA agrees. The Plaintiff is certainly free to cross-examine DA Williams about the basis for, and any limitations on, his first-hand knowledge. The Plaintiff is also free to object if he believes that any particular testimony by DA Williams constitutes inadmissible hearsay. But the premise of the Plaintiff's motion—that DA Williams has *no* personal knowledge of OPDA's policies and practices during Mr. Connick's administration—is clearly and indisputably false. The motion should therefore be denied.

---

[5] Exhibit 2, Depo. of Jason Williams, at 89.

[6] Exhibit 2, Depo. of Jason Williams, at 181–182.

[7] Exhibit 2, Depo. of Jason Williams, at 181–182.

[8] Exhibit 2, Depo. of Jason Williams, at 184.

Respectfully submitted,

 /s/ Matthew J. Paul
W. Raley Alford, III, 27354
Matthew J. Paul, 37004
Inga C. Petrovich, 31284
STANLEY REUTER ALFORD
  OWEN MUNSON & PAUL, LLC
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: (504) 523-1580
Facsimile:  (504) 524-0069
wra@stanleyreuter.com
mjp@stanleyreuter.com
icp@stanleyreuter.com

*Counsel for Jason R. Williams (in his official capacity as Orleans Parish District Attorney)*

4