**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| DWAYNE WILLIAMS, | Civil Action No. 23-01922 |
| *Plaintiff*, | |
| v. | Section O |
| | Judge Brandon S. Long |
| JASON WILLIAMS, in his official capacity, and ABC INSURANCE COMPANIES 1-10, | Division 1 |
| | Magistrate Judge Janis van Meerveld |
| *Defendants*. | |

**OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE
ARGUMENT OR QUESTIONING REGARDING NOPD CASE NO. K-33292-93**

Jason R. Williams, in his official capacity as Orleans Parish District Attorney ("OPDA"), through undersigned counsel, respectfully submits this opposition to Plaintiff Dwayne Williams's motion seeking to exclude argument or questioning concerning his 1993 arrest for murder in connection NOPD Case No. K-33292-93, Doc. No. 84.

Mr. Williams was arrested in November 1993 for first-degree murder and attempted first-degree murder in connection with a fatal shooting involving multiple victims.[1] He spent about 90 days in jail before the charges were dropped and he was released.[2] Mr. Williams discussed this arrest with the expert psychologist who intends to testify on his behalf, and she included the discussion in her report.[3] He explained to the psychologist: "Some people were shot at and I had my name come up. Those charges were dropped . . . . I was hanging out with some rough dudes.

---

[1] *See* Exhibit 1, NOPD Supplemental Report for Item No. K-33292-93; Exhibit 2, Depo. of Dwayne Williams, at 146–154.

[2] Exhibit 2, Depo. of Dwayne Williams, at 151.

[3] Exhibit 3, Report of Dr. Kathryn Ambeau, at 38 (discussing Mr. Williams's arrest for "aggravating circumstances regarding gunfire").

1

And when things to down, you don't snitch. You just take the fall. On that one, everything was dropped though."[4]

Mr. Williams seeks to exclude "any line of questioning or argument seeking to connect" him to the shooting. To be clear, OPDA will not "seek[ ] to connect Mr. Williams" to the crime itself or prove that he actually committed the murder and attempted murder for which he was arrested in 1993. However, Mr. Williams's arrest and incarceration for this crime are relevant to other issues in this lawsuit; indeed, Mr. Williams has injected these issues into the litigation himself through his damages claims and expert reports.

Specifically, Mr. Williams seeks an award of damages based on income allegedly lost as a result of his conviction and incarceration for the murder of Laston Clark in 1995. In fact, he intends to present expert testimony opining that he has lost more than $2 million in wages and employment-related fringe benefits.[5] Mr. Williams's criminal history, including his arrest and months-long detention for murder in 1993, are relevant to respond to these claims and demonstrate the factors limiting his past employment and future employability. In *Reeder v. Williams*, No. 22-cv-4614, 2025 WL 1142179 (E.D. La. Apr. 17, 2025), involving a § 1983 claim against OPDA by a different plaintiff, another section of this Court allowed the plaintiff's expert witnesses to testify concerning alleged lost income as a result of incarceration, but explained that OPDA "would be free to explore at length with Reeder his pre-incarceration criminal history and poor employment record. Such evidence is relevant in light of Reeder's lost wage claim and ***cannot be excluded regardless of its potential prejudice***." *Id.* at *3 n.4 (emphasis added); *see also, e.g.*, *Holston v. DeBanca*, No. 09-cv-2954, 2012 WL 843917, at *6 (E.D. Cal. Mar. 12, 2012) (holding that

---

[4] Exhibit 3, Report of Dr. Kathryn Ambeau, at 38.

[5] *See* Doc. No. 80 (motion to exclude expert testimony concerning lost wages and benefits).

"plaintiff's prior contacts with law enforcement may bear on his lost wages or emotional distress claims").

Mr. Williams also seeks an award of damages based on alleged "pain and suffering, severe mental anguish, emotional distress, . . . humiliation, injury to reputation, permanent psychological damage, and restriction of all forms of personal freedom" as a result of wrongful conviction and incarceration. Doc. No. 1 at ¶ 6. Mr. Williams intends to present expert testimony from a psychologist, Dr. Kathryn Ambeau, opining that his incarceration at Angola traumatized him and caused or exacerbated various mental disorders. To respond to these allegations, OPDA must be allowed to explore Mr. Williams's other prior periods of incarceration—including his months-long incarceration in connection with the 1993 murder arrest—and the extent to which it caused or contributed to the injuries he alleges in this lawsuit. As noted above, Dr. Ambeau found this arrest significant enough to be included in her expert report. Mr. Williams's prior arrests and imprisonment for other charges are also relevant to, among other things, his allegations of harm to his reputation.

Mr. Williams suggests that even mentioning his arrest for the 1993 murder would be unfairly prejudicial to him. However, as Mr. Williams notes, he was asked about this arrest in his deposition, and he "answered conclusively that he had no knowledge of the events or of any of the victims." Doc. No. 84-2 at 1.[6] He therefore appears confident that "[a]ll that the OPDA will get out of this questioning would be unrebutted denials." *Id.* at 4. He also correctly notes that "OPDA has not identified any witness who OPDA asserts can testify to [his] alleged involvement." *Id.* Mr. Williams can also point out that "prosecution against [him] was declined and he was released

---

[6] Of course, this testimony is difficult to reconcile with his statements to Dr. Ambeau about "tak[ing] the fall" for the crime rather than "snitch" on others who were responsible. *See* Exhibit 3, Report of Dr. Kathryn Ambeau, at 38.

without ever having been charged." *Id.* at 1. Accordingly, the concern that any mention of his arrest and incarceration for this crime will cause the jury to irrationally conclude that he is a murderer appears to be unfounded. On the other hand, considering his unfounded personal and professional attacks on the men and women who served as Assistant District Attorneys in Orleans Parish, evidence that OPDA declined to pursue a serious charge against him is an important check on his rhetoric.

For the reasons set forth above, Mr. Williams's motion *in limine* should be denied.

Respectfully submitted,

*/s/ Matthew J. Paul*
W. Raley Alford, III, 27354
Matthew J. Paul, 37004
Inga C. Petrovich, 31284
STANLEY REUTER ALFORD
  OWEN MUNSON & PAUL, LLC
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: (504) 523-1580
Facsimile:  (504) 524-0069
wra@stanleyreuter.com
mjp@stanleyreuter.com
icp@stanleyreuter.com

*Counsel for Jason R. Williams (in his official capacity as Orleans Parish District Attorney)*